My name is Ian Stumpf and I represent appellants Pamela Ball and Charles Smalley. This is an appeal of a class action lawsuit that was improperly dismissed under the Erased Judicata Doctrine. This lawsuit sought to remedy homeowners who were illegally charged fees that were unearned throughout foreclosures conducted by Shapiro & Burson through their use of a practice widely known as robo-signing. This case was dismissed under the Doctrine of Erased Judicata. The Erased Judicata Doctrine, as you well know, must, in order for a party to invoke that doctrine, a party must establish three elements, that the parties are the same or in privity with the parties in the earlier dispute, or the second prong, which I'm going to focus on here today, that the claim presented is identical to the one determined in the prior adjudication. That's from the Laurel Sand & Gravel Incorporated v. Wilson case that was before this court about five years ago. Focusing here on the second prong, appellants' present claims, the claims that were brought in the lawsuit, could not have been raised in the prior foreclosure actions. Claim preclusion only precludes claims that could have been asserted and litigated in the original suits. One of the reasons that Judge Mott dismissed the case, he cited the Singer v. Stephen Cokes Incorporated case, where the, quote, means of obtaining such knowledge of a claim existed and the knowledge could have been obtained with ordinary diligence. Then the claim would be precluded. In this case, Your Honor, the information that was presented was only obtained after these homeowners had their homes foreclosed on. The information that was brought to light by the affidavit of Mr. Jose Portillo, a whistleblower who used to work... The alleged misconduct, did you say? That's correct, Your Honor. Occurred before the time that they ordered to file the report? That's correct, Your Honor. Didn't the Maryland cases that you cited deal with, by and large, conduct that occurred after the filing of the auditor's report? I'm not sure I understand what you mean, Your Honor, but there are... a proposition that claims, like this is cases for, in terms of the Rooker-Feldman Doctrine, it does not bar a federal court challenge to an individual's improper conduct during a prior state court proceeding. So there is legal precedent for bringing forth claims after that alleged this type of thing. The strong presumption is that you should raise your objection at the time of the auditor's report, is it not? That is, that's correct, Your Honor, but in this case, how could someone who had their homes foreclosed raise an objection based on information that, at that point, just would have been woolly speculative? This information hadn't come to light, and if these homeowners had raised an objection to the auditor's report, based on the business practices of... But you're supposed to say, I mean, there's a due diligence requirement, you're not just to sit passively by. Yes, but due diligence in this part, in this case, would have required sending almost spies into this business to take a look at their business practices. The business practice couldn't have come to light, and frankly, a good business might keep their trade practices secret, to an extent. This wasn't brought to light until one of the people inside that company decided to come forward and blow the whistle on their practices. I mean, ordinary due diligence, in this case, could have meant that the homeowners giving Shapiro and Burson a call and saying, well, do you have good practices? And of course, they would have said yes. This information was bottled away in the individual employees... Do we owe some deference to the way in which the trial court analyzed the due diligence question? I'm sorry, Your Honor, I didn't hear all that. Do we owe some deference to the way in which the trial court found there was an absence of due diligence sufficient to invoke the exception? I don't quite understand. Could you maybe ask that in a different way? No, I won't. Okay. I don't understand. Well, in this case, the test of obtaining the knowledge with ordinary diligence. The Singer v. Stephen Koch's case says ordinary diligence. And I have another case, the O'Hara versus Covins case, which says that whether a party acts with due diligence is a fact question for jury. I have a site for that. That's 305 MD 280. So this, even if there is the matter of diligence, that was a fact question for the jury. And it was improper for the district court to dismiss the case without allowing the appellants an opportunity to develop an evidentiary record of the due diligence. Mr. Stump. Yes. I trust you won't view this as a curveball. It's certainly not intended as a curveball. But can you address Rooker-Feldman? Sure. Why isn't this case squarely barred by Rooker-Feldman? I understand the district court didn't reach that issue, but it was clearly presented below. And as you well know, this court can decide a case on any ground, affirm a district court on any ground appearing in the record. Okay. Why isn't this a classic Rooker-Feldman problem? Sure. Well, the Sixth Circuit in Pittman stated that Rooker-Feldman does not bar a federal court challenge to an individual's improper conduct during a state court proceeding. I brought this up earlier in my question. But here we have improper conduct that is shielded by a final judgment. That's correct. Okay. But as to the second prong of res judicata. I'm not talking about res judicata. We're talking about Rooker-Feldman. Okay. Well, here the appellates challenged the improper conduct of the appellees in the prior foreclosure actions. This particular claim wasn't brought up in the prior actions. The prior actions dealt with, it was just a simple foreclosure. This deals with the business practices of Shapiro and Burson that led to the foreclosure. But the auditor's report has been ratified and that amounts, you agree that that amounts to a final judgment? That's right. By a state court? Yes. So how can you upset that without transgressing classic Rooker-Feldman doctrine? Well, my reading of Rooker-Feldman, Your Honor, is that it wouldn't bar a federal court challenge to improper conduct during the state court proceeding. And at this point, and this... But that conduct is the subject of a final state court judgment. That's correct. And we can't review a final state court judgment. Only the Supreme Court can do that. Okay. Well...  you think you can just come into court at any time after a final state court judgment and say there's prior misconduct. And that would allow collateral attacks upon state court judgment ad infinitum. And doesn't Maryland have some interest in the finality of its foreclosure proceedings that a federal court can undermine collaterally? I mean, part of the fabric of Maryland law as I understood it, and as District Judge Mott seemed to understand it, is that they didn't want these proceedings to dribble on indefinitely. And this whole idea of just attacking final state court judgments by collateral, or civil judgment, by filing suits in the first instance in federal court, is... I think it's bad business. Absolutely, Your Honor. But I do have four cases which I'd like to draw the Court's attention to. Two from the Sixth Circuit and another from the Ninth Circuit. In the Todd v. Weltman case, 434F.3D432, these are all in the record somewhere, it held that Rooker Feldman did not bar a plaintiff's FDCPA claim that defendant obtained after a favorable state court judgment, which was obtained through a fraudulent affidavit, much like the case that was before us today. In the Brown v. First Nationwide Mortgage Corporation, another Sixth Circuit case, in a 206F.APPX436, held that Rooker Feldman did not bar a plaintiff's claim based on foreclosure obtained through defendant's fraud. But you don't challenge the foreclosure here, correct? Yes. The foreclosures all were going to take place one way or another. Right. You do not challenge in any way, shape, or form the foreclosure. That's correct. Your claim is rooted solely in the fees and commissions that were paid out of the proceeds of the sale, and those fees and commissions were ratified by a final judgment of a state court. That's also correct. So how do those cases help you? I'm having difficulty understanding how those cases help you. They show how the Rooker Feldman doctrine had not applied to similar circumstances, and how this particular set of circumstances does fit into a similar mold as those cases did. You mean because they're foreclosure cases? Is that the generality that you're offering us? They were all foreclosure cases, but they were also foreclosures that were obtained through one way or another through fraud. You're not challenging that the foreclosure was obtained by fraud, correct? You're not challenging the foreclosure at all in this case. That's correct. I'm challenging that the fees were fraudulently obtained through their business practices. I just don't see any limiting principle to what you are... I don't know how we would ever apply this in the future. I don't see any limiting principle. It can just... Because what you allege can be alleged to go behind almost any final judgment of a state court. It opens up the gate just real wide. Okay. Well, in this point, the limiting principle would be that after all these matters were concluded on a class-wide basis, folks were assessed fees that were unearned. That's not a limiting principle. It's a statement of the facts of the case, but it's not a limiting principle. The point that my colleague is making is one that I share, which is that there has to be... that a final judgment has to operate as some kind of a cutoff point. And there has to be some meaning to it that you just can't lightly go behind. Otherwise, judgments just lose their effect if they can be this loosely unwound. Okay. But anyway, thank you. I'm out of time. You're welcome. Mr. Scott? Good morning. May it please the Court, Robert Scott, on behalf of Appalese. Your Honors, respectfully, I submit that this is not a close case. Judge Motz got this absolutely right. The plaintiff's claims are barred because they were raised or could have been raised in the state court foreclosure action. If you look at the complaint, I think counsel just conceded that what this is about is the attorney's fees and commissions that were assessed in the foreclosure case. And as the district court noted, the Maryland rules provided a mechanism for the plaintiffs to challenge those fees in the foreclosure case. Maryland Rule 2543E requires that within 10 days of an audit report, anyone wanting to challenge it, file exceptions. And the Maryland Court of Appeals has said more than once that you must raise a challenge to the fees by way of exceptions to the auditor's report or you're barred by res judicata from later raising it. What sort of remedy, if the grounds for the challenge is raised after the 10 days, what sort of remedy does the plaintiff have? Well, I believe the only ground there would be in that scenario would be some sort of fraud. And the Maryland rules provide under Rule 2535 that you can apply to reopen a judgment if you discover that it was procured by fraud. So if they are claiming that there was fraud and that is the basis for... And they do. And they do, their remedy would be to file a motion to reopen the judgment, the state court judgment, under the state court rules. It would be a state equivalent of a federal Rule 60B. Correct. And most states have some opening like that. I mean, the remedy would be either appeal within the state court system in some way, or there would be a 60B, Maryland's equivalent of a 60B motion of relief from judgment. And the states themselves have remedial schemes. What you're saying is the very worst way to go about it is to file a collateral federal lawsuit. Right, and that's absolutely right, Your Honor. There is a procedure under Maryland rules to reopen a judgment if you believe that it was procured by fraud. What about a collateral state court complaint for fraud, either within the 10-day period for exceptions, or accompanied by the Maryland equivalent of a Rule 60 motion? In other words, I think you understand the question. I mean, they could have brought a... Because Maryland is not a compulsory counterclaim state. So that's all sort of mixed in here. And of course, the district court had no occasion to address that. But at least theoretically, they could have filed a separate lawsuit and included in that lawsuit something in the nature of exceptions to the auditor's report. Yeah, it's well established under Maryland law that you can bring a counterclaim  So if they discovered this and they wanted to bring a claim, they either ask the court to reopen the judgment under 2-535 on the grounds of fraud, or file exceptions to the auditor's report and allege fraud, and bring a counterclaim in the foreclosure case before final judgment is entered. And they didn't do any of those three things. Instead, they brought a new suit in federal court,  what they're really doing is trying to attack a state court judgment that found that these attorney's fees were appropriate. Of course, they probably couldn't have brought a class action as a counterclaim in a foreclosure. I'm not sure that's absolutely right, Your Honor. In fact, I've seen lawyers try to do that. Well, have you seen any succeed? I don't know. I have not seen it succeed yet, Your Honor. But I do know from personal experience that it is still being attempted. Well, lawyers do all kinds of things. But again, here's the other point, Your Honor, is that Mrs. Ball did challenge the attorney's fees in the foreclosure case. She appeared and she filed papers, which she labeled as exceptions to the auditor's report, which included a complaint about the attorney's fees, and that was raised. What happened to that? It was rejected by the state court. Was there a final order rejecting that? Yeah, ultimately there was. Is it in the record? Yes. Is that one of those special appeals opinions? Correct, Your Honor, yes. So, I mean, the argument that they couldn't have raised this is simply incorrect, and it's contradicted by their own actions. I mean, they did challenge it.  They challenged it with something in the nature of an exception, not an affirmative claim for compensatory and punitive damages. That's correct. Mrs. Ball filed exceptions to the auditor's report. Pro se. I believe so, yes, and those were rejected. Now, this argument about lack of knowledge, I want to address that briefly. As Judge Motz correctly pointed out, lack of knowledge does not make race judicata inapplicable. They try to invoke this exception under the Singer case, but they don't... What they don't recognize is there's nothing in their complaint alleging that they engaged in any due diligence. There's nothing in the complaint alleging that they could not have discovered this prior to the final judgments being entered. And they didn't ask to amend. And they did not ask to amend, and they argue in their briefs that, well, we couldn't have discovered this because we didn't know about it, but that's not in the complaint. And if you're going to rely on your... We're on a motion to dismiss here. If it's not in the complaint, it really shouldn't be considered. Furthermore, they don't explain what facts they would have needed to discover in order to bring these claims. They say, well, we didn't know about the robo-signing until after final judgments were entered. But the fact is, they don't allege any specifics with respect to how the alleged robo-signing impacted their particular foreclosures. They don't allege that there was any document that was quote-unquote robo-signed, filed in either one of their cases. They talk generally about robo-signing, but they don't say this specific document or affidavit that was filed in my foreclosure case was robo-signed or signed by somebody without authorization. So there really isn't anything that they could have discovered later that would have given them any grounds for a claim. And as we articulate later in our brief, they don't articulate a viable claim. Even if you assume everything they say is true, it's not a claim for fraud, conspiracy, or any of the other alleged torts that they've brought. So there really isn't any explanation, not only of what they would have done or what they could have done or what they did to find this out, they don't explain what it is they needed to know before they could have brought the claim. They're relying exclusively on generalized allegations. There's no specifics as to how this alleged robo-signing affected either one of their foreclosures. With respect to the argument that the claims are not identical, and I think the court's already covered this, but I'll just point out that they don't discuss the Jones case that this court decided recently, which is very similar to this, in which plaintiffs were making very similar allegations about defective affidavits filed in foreclosure cases, and this court held unequivocally that those claims were the same claims that were raised or could have been raised in the foreclosure case, and held that the district court in that case did not abuse its discretion by not permitting the plaintiffs to amend their complaint to bring these new claims. The Jones case is not a published opinion, is it? That's correct, Your Honor. It was not selected for publication. But it is directly on point, I believe. So I think that's pretty much it. Unless the court has any questions, I'll yield the remaining of my time. Thank you. Good morning, Your Honor. I represent one of the individual defendants in the case, Mr. Jason Murphy. I wanted to speak to the court just briefly to address Your Honor's question with regard to Rooker-Feldman. We believe that Rooker-Feldman, although the trial court did not base his decision upon that, it was raised in the briefs and it was discussed and was a basis for the motion to dismiss. And as Your Honor described it, we believe that the Rooker-Feldman doctrine dictates that this case should have been dismissed based upon the application of Rooker-Feldman. Is there anything to add to what my colleague has already said? I think he did a very good summary, Your Honor. I would just say that this court's decision in the Devaney case speaks volumes with regard to how the court needs to look at this type of a situation. And in this particular case, it's clear you had final judgments. They're really attacking final judgments here and that's basically what this court said in Devaney. And we would basically say that this court needs to continue to follow that line. The issue of whether things are inextricably bound up in a judgment or not, we believe in a case like this doesn't really even apply. As this court said in Devaney, that inextricably brought into a case is not really a test, it's really a conclusion. And we believe that that conclusion fits exactly into this case that's before the court today. If there are no further questions, Your Honor, thank you very much. A few brief points. First of all, there was an argument about that the complaint, or the First Amendment complaint did not show that the events came to light in a timely manner. But simply the... Sure, that the First Amendment complaint did not show that the allegations of Mr. Portillo came to light in a timely manner. But what the first complaint does show is the timeline. Is that Mr. Smalley and Ms. Ball had their cases work their way through the courts and were foreclosed upon. Then after those happened, Mr. Portillo came forward with his allegations about the business practices of Shapiro and Burson. Second, the allegations about that there was no mention of robo-signing in the First Amendment complaint also is a little off the mark. Mr. Portillo does state in his affidavit, and we allege in the complaint, that he signed several of the documents associated with Ms. Ball. And he also provided a sworn testimony in his affidavit about the business practices of Shapiro and Burson and how those practices were applied in the Smalley matter and throughout all the foreclosures that were the basis of this lawsuit. And if the court has any further questions for me, otherwise I will simply submit. We thank you very much. Thank you.
judges: J. Harvie Wilkinson III, Andre M. Davis, Jackson L. Kiser